How do you pronounce that?  Roccozzi. Sorry. Mine gets butchered all the time, so. I appreciate it, Judge. Whenever you're ready. Good morning. May it please the Court, William Roccozzi on behalf of the Appellant and Declaratory Plaintiff, Prasco, LLC. The only issue we have today is whether there was subject matter jurisdiction to adjudicate Prasco's declaratory judgment claim below. Prasco believes that there was, and it should be reversed and remanded for resolution on the merits. The test, as we know now, dating back to the Maryland casualty and ethnic cases, is reaffirmed in Metamune, and now by this Court, is simply. Counsel, how in the world does marking play a part in this? I mean, I have to say, I think the argument is pretty crazy. Marking plays a part, Your Honor. We're not saying it's dispositive, but it must be considered, just as orange book listing must be considered. Should the issuance of a patent be considered? Well, certainly there has to be the issuance of a patent. But should the issuance of a patent give rise, potentially, to a cause of action for declaratory judgment? There, I don't know if I understand the question, Your Honor. There must be an issued patent to seek declaratory ruling. But the issuance alone, or should the issuance be a factor we should take into account? Not such as we're arguing for marking, Your Honor. Why? Why should marking be any different? Isn't the purpose entirely behind marking, if you look to the legislative history of 287, to provide notice to the public so that people will be on notice of what the patentee believes is covered by his invention? Absolutely, Your Honor. The purpose is to put the public on notice. Why do we want to put, why in the world would we ever want to contradict that purpose by enacting a rule that says the simple act of marking is a factor that will weigh in favor of people being able to bring a DJ action? Doesn't that put the patentee in the very awkward position, then, of having to say, well, if I mark, I could possibly be bringing a DJ action on myself. Well, I better not mark. I mean, wouldn't that be completely contrary to the entire purpose of the marking statute for us to do that? Prasco is not asking for the marking statute or the act of marking alone for such a rule. Why should it be a consideration at all? For us to say it's a consideration means it's a thumb on the scale that weighs in favor of your client's ability to bring a suit. Because Orange Book Listing, this court has already held, is a factor that must be considered. Albeit it is not dispositive by any means, it should be considered. Why? Because it puts the public on notice that there is a patent out there that covers a particular product. But you have to take that fact in context. Is that why the Teva case said the Orange Book Listing was a factor that could be considered? Because it puts the public on notice? Or was the indication a little more sophisticated than that? Under the unique circumstances of the Hatch-Waxman Act, the simple filing of a NANDA is going to constitute infringement. So the listing in the Orange Book, which triggers that whole thing, ought to play a contrary counterpart role and therefore be considered for DJ jurisdiction. Absolutely. There are unique circumstances in the Hatch-Waxman regime. How does marking a product, how does it all correlate to the explanation for why we gave in Teva for the Orange Book Listing? To the extent that the Orange Book Listing puts the public on notice of patents that cover the brand drug. That's the purpose of the Orange Book Listing in the statute. The patent marking statute, the purpose is to put the public on notice of patents that might cover the product and to preserve the patentee's claim for damages. Now again, we're not arguing for a rule that that alone gives rise to any type of controversy. What we're saying, Your Honor, is it is one of the factors that must be considered under all the circumstances. So you want us to discourage patentees from marking? Absolutely not, Your Honor. Of course you do, because if they mark, that's going to be a factor which contributes to the ability of people to drag the patentee into court. Your Honor, the patentee can be dragged into court for a lot of reasons if all the circumstances show a dispute. And here, if you combine the marking with the fact that this is one of MS's core brand products and another critical fact... What? How does that have any impact on whether or not that creates a controversy between two parties? You know what? Okay, every time somebody comes out with a core product and they actually let people know they have a patent on it, anyone can sue them, anyone off the street can just come sue them because they might want to get into the same field. No, because that's not what happened here, Your Honor. What happened here was not six months before this action was launched, MEDICIS blindsided PRASCO with another suit on one of their core products. PRASCO was reasonably concerned... A patent suit is not at all related to the patent in this case, right? There's no relationship, there's no continuation, there's no divisional, there's no CIP. It is not part of the same patent family and we would submit there's no authority that says it has to be, Your Honor. It's totally unrelated. This was your point that the previous lawsuit demonstrates in your view that the MEDICIS and the other guys are litigious and that they are the kind of company that is careful to protect its rights by using lawsuits. Absolutely, Judge. We never argued they were part of the same patent family, we never suggested it, we never implied it. If I have a series of patents and let's say I have ten patents and I sue on one and the other nine are unrelated, I'm placing those nine patents subject to a death judgment possibility? Even though I've never asserted them, I've never claimed that they would be asserted or otherwise? No, not necessarily, Your Honor. Here the facts are a little more detailed than that. And that is that we had a core product, PRASCO was blindsided on with no notice. Six months later, PRASCO wants to launch a benzoyl peroxide product of its own for which MEDICIS has another one of its core products in the market that is marked with patents saying these patents cover this product. PRASCO was wary and reasonably so that it would get blindsided again. They wanted to get some patent certainty, they didn't want to go with the risk if they didn't have to. This was all confirmed later on. What is the evidence of actual controversy? There has to be a controversy. Yes, Judge. The evidence of an actual controversy is the fact that PRASCO was out there competing at risk against one of these. So competition is a factor we should consider for whether or not there's an actual controversy. So any two companies that compete? No, Your Honor, not any two companies that compete. We're not writing on a blank slate here. Here we have two companies with a history. It's not just patent marking. It's not just the fact that PRASCO has a competing product out there. It's the fact that this company has not hesitated to protect its patent rights against PRASCO, ambushed them with an action not six months before. PRASCO was concerned, reasonably apprehended another suit. Isn't your argument, sir, based on the previous lawsuit, connected, if you will, to the fact that your client went to the patentee and said, please give me a covenant not to sue. Please assure me that I'm not going to be blindsided like I was before. Because I understood the framing of your argument. You were trying to merge or meld those two factors together. We are, Your Honor. And I was just answering the last question getting to that. When the first complaint was filed and they came back and said, this is news to us, this was secret, you blindsided us, PRASCO said, fine, here's everything. Here's the samples. Here's the product. Here's the ingredient list. More information than they could ever possibly need to evaluate this and then ask for a covenant. Their refusal to give it. Do you know how many patentees would be driven out of business if every defendant had the option of dumping all their products on them, pointing to them all and saying, give me a covenant not to sue or I'm going to haul you into court. How many really large defendants are you going to think are going to go after? Tiny little patentees and just abominate them that way. But it wasn't just the quiet, tiny patentee that had done nothing in the past, Your Honor. This was a patentee that had gone out of business. It had once asserted one patent against you all that's unrelated to this and has never asserted this patent against anyone. Unrelated in patent family, yes. But related in it was another acne. Different product. Different product, yes. Different product and unrelated patent. Unrelated patent family, different product. But another core product of Metasys, another acne cleanser product and the same class of product, Your Honor, which is why they sought that certainty. What prevented you from entering the market with your product? Nothing, Your Honor. Just produce it and put it in the marketplace? They eventually did. They held off and then they entered the market several months later and then provided the samples of the commercial product to Metasys. Have you been sued? They have not been sued, Your Honor. But the passage of time alone does not diminish the controversy. If anything, it's increasing the exposure. But you were able to at least enter the marketplace? That's correct, Judge. With your product, no one prevented you from doing that? They did not, but they have reserved the right to come after Prasco in the future at the time and place of their choosing. That's an opportunity that every patentee has. That's correct, Your Honor. But you want us to limit that opportunity for a patentee to come in, wait until the product is in the marketplace, and then determine whether or not that product infringes its patent. Not just any patentee. A patentee which has gone out of its way to blindside Prasco in the past. These aren't two parties that had no dealings with each other. Is that a new test you want us to establish? A blindsided test? We are not asking. Absolutely. That's a great point, Your Honor. We are not asking for any strict test to be established. As a matter of fact, that's the point we're trying to make in our papers. There is no strict and specific. The Supreme Court told us not to do that. We used to have a test, and the Supreme Court told us that the totality of the circumstances is what is involved. And that's the problem that we had with the district court ruling. It appeared that the district court was attempting to go from one, now defunct test, to an even more specific test by trying to shoehorn the facts here. Let me ask you a question about your covenant not to sue point. What would happen if you had gone to the patentee and said, please give me a covenant not to sue, and the patentee didn't say anything? Could you go to court the very next day? Or do you have to wait a while? Because once you've asked for the covenant not to sue, I would think the patentee has some time to consider the subject, right? Absolutely, Judge. At what point in time does your covenant not to sue point ripen so you can unabashedly make it to a judge to say, well, I asked for the covenant. Give him a month. I'm talking now to what Judge Moore was talking about, is the amount of if the covenant not to sue point becomes legitimate for jurisdiction purposes in a D.J. action 10 minutes after you asked for it, it seems to me unreasonable. We would not argue 10 minutes, Judge. They have to be able to evaluate the product, obviously. We gave them everything they needed and more to do that. These are very specific patents. They had the ingredient list, the labeling, the products themselves. Gave them time to evaluate it. They have refused all the way through this appeal to even discuss a covenant. Let me ask another question. Why are we looking at these facts, jurisdictional facts, that occurred after the filing of the original complaint? Now, I know the judge thought that you had an amendment as a right under 15A. But the law seemed to me to be pretty clear that if you're adding new subject matter, so to speak, that arose after the filing of the original complaint, then you're in 15D supplemental pleadings. And a supplemental pleading can only be filed with leave of the court on motion. And there was no motion here. Our view on that, Your Honor, would be it could be done either way. Filing an amended complaint as of right renders the initial complaint fidelity. The other side has objected throughout. It wasn't very clear. There was rounds of objection below. But it said, hey, you can't consider the amended complaint. You have to basically decide the standing on the original complaint. Which would be pretty adverse to your case, I mean. And it's also not the law, Your Honor. The subject matter jurisdiction looks at the facts of the state of affairs. I'm just talking about whether, I mean, if the law requires in order to successfully file a supplemental pleading that there has to be a motion and there has to be expressed leave of the court granted, I didn't see any evidence of any motion filed in connection with your amended complaint. There was no motion. There was no motion to supplement or for leave. Couldn't want to argue that the trial judge abused his or her discretion when they elected to treat this as a legitimate supplemental pleading. Well, we don't believe that he... And I found case law that says if you're, and Wright and Miller and Moore also seem to say that if what you're adding into the complaint are factual matters that didn't exist as of the original filing of the complaint, then you're in supplemental territory. You can't amend as of right to add facts that didn't exist as of the original filing. You're supplementing. And if here there was a technical failure to properly file the amended complaint, then from jurisdictional purposes it wouldn't be in front of the court. I don't know if I'm understanding your Honor's question correctly. The original complaint, whether it was amended as of Wright or otherwise, is a nullity. As if it never existed. No, only if it was properly amended. If it wasn't properly amended, it's living in full glory. Correct. But we're not aware of a story... Under 15, how can you amend as of Wright when you're adding new matter? A. And B. I imagine you're not... Are you disputing that this is a supplemental complaint? Are you actually saying this is not a supplemental complaint covered by 15D? We're not arguing that this is not new matter, if that's your question. Of course it did. So it has to, by definition, be a supplemental complaint. Look, you made a mistake when you called it an amended complaint, but this happens all the time. And there are lots of cases, aren't there, that say a district court is free to take things that are termed amended complaints and deal with them as supplemental complaints. I mean, I could probably help you out by giving you a few. Absolutely, Judge, but I don't see... I see a disconnect between how it would be an abuse of discretion for the district court to treat it that way. Would it... Because it would be the same result, whether it was as moved to supplement, moved to amend, amend as of right, or dispute without prejudice. But it's a different procedure, and the rules, I think, are very, very clear on that point. Whether you come in on an amendment or you come in as supplemental under 15D. It is... I think it's a question of following the proper procedure, because in one, you have a requirement to move for the court's permission to supplement and you don't on the other one. Well, since the... I think it's a question of following the proper procedure to be followed. But anyway, you're in your rebuttal time, unless we have any more questions. We'll restore three minutes of your rebuttal time. Thank you, Judge. Mr. Powers? Yes, Your Honor. May it please the court. So, counsel, why isn't marking like the FDA orange book listing that the Teva case indicated was a factor, not dispositive, but nonetheless a factor? In part for the reasons that you articulated in the last question and answer session. Never a bad thing to say, but do you have anything more for me? I do. The orange book listing is part of a complicated statutory and regulatory framework that is... The purpose of it is not the same purpose as the marking statute. The marking statute's purpose is exactly what Your Honor set it out to be, which is notice to the public. The orange book listing not only has different purposes, it has different effects. The different effects, of course... What is the purpose of the orange book listing, then, if it's not one of public notice? The purpose is to provide the basis for, then, the rest of the statutory framework that follows from an orange book listing, which is the periods of exclusivity, the periods of notice. There's an elaborate framework, as the Court is well aware, that flows from an orange book listing, and that has to do with exactly the issues that are being addressed here, which is when a D.J. may be filed, when a patentee is required to decide to sue, what periods of exclusivity apply. There's a very complicated, delicate balance that's set out in that framework. It also prevents the person who is challenging those patents at that point from entering the marketplace without the proper approval. Is that the case here? It is not the case here, and that's the primary distinction I wanted to argue with. Everybody's been assuming that the purpose of the marking is to let the general public know that this carafe enjoys a patent. The average citizen doesn't care whether it has a patent or not. The competitors, the people who might want to make a competing product, they need to know if it's patented. Precisely. Why isn't the marking statute, at least in part, sending a message to those who would like to compete with the patentee to warn those that would like to compete with the patentee that this is my turf? It is certainly, in part, noticed to a class of competitors out there, anybody who might wish to compete, that there's no doubt that it's notice of that. What it is not, at least it's never been held so far, to be an affirmative... It's also a key to let you get damages if you haven't otherwise notified the party that... That's the quid pro quo. As with many parts of the patent statute, the patentee gets a benefit... When you're talking about giving somebody a right to damages, you're obviously talking, you're whistling Dixie or whatever to the party... Whistling to the graveyard, I think. You're whistling to the party that would infringe. But you're not whistling to a party. You're speaking to the world. I agree that it's not... The communication of the marking is certainly a different communication than when the patentee sends a copy of his or her patent... Just sends whatever they do, along with a claim construction chart or not. Certainly, that's a stronger indication. Speaking to the world thing, though, why wouldn't... If a patentee took out an ad in the New York Times, a full-page ad, and said, I'm going to sue every person who uses voiceover technology, look out, here's my patent, you're on notice. The patent marking is not equivalent to that. Why? Because there's no indication of who you're going to be suing. And there's no indication that you're going to sue. None at all. It's merely a statement. I mean, an invitation to give a license. There are probably millions of patents that have been marked and never sued on. It is not a statement that I am going to sue. Let me ask you this. Let's assume we take the facts of this case, and we say, oh, we agree with you. There's not enough there to have a live controversy. Start adding the facts for me. I know you probably don't want to do this. I definitely don't want to do this. But I'm going to ask you to tell me what additional facts we would add, and then at what point we'd have jurisdiction. There's one sense in which I think I agree with Appellant here, which is it's a totality of the circumstances test, so there's not a formula. I'm just looking for a few more data points from you to say if your client had done so. Fair enough. I would go back to first principles, which are the three requirements for standing. There has to be injury in fact caused by the patent holder that's redressable in that lawsuit. That is not what has been shown here. There's no conduct of ours. What conduct would show that injury in fact? If we had communicated to them our intention to sue. That would sue them for their product. That would be it. We're in somewhat an uncharted territory. We've had a couple of ANDA cases, but we haven't had a whole lot of cases like this that are free and apart from Hatch-Waxman. What I'm trying to get a grasp on is what additional facts would you add, and if you add, will we have to actually threaten the lawsuit? I think we should not consider this in the ANDA context at all. This is a garden variety case of anybody selling a product that somebody might have a patent on. That's all it is. We're not in the ANDA Hatch-Waxman context at all. This is, to me, analytically indistinguishable from any product being sold out there as to which one or maybe a hundred patents could be asserted. What would happen if the facts showed that in the past your clients had sued PRASCO 15 or 20 times on a whole range of patents? How much more leverage does that give to the fact circumstances in favor of finding jurisdiction? It clearly gives more. As to whether that would be sufficient, it would then depend on how many times we didn't sue. The issue isn't whether a company is litigious, and certainly one lawsuit wasn't litigious. What happens if the record would show that these particular patentees had never granted a license to anybody? I don't think that's enough. I believe every patent would need to be assessed on its own. So let's say we sued on different patents and different products. A patentee should have the right, as to its patent, to decide whether it's in play or not. That is the right that that patentee has. And that right is extinguished when that patentee takes some affirmative act. That's the requirement of the standing rule that says it has to be caused by the defendant. The Supreme Court said that the rule that a plaintiff has to vet the firm or as here, risk treble damages in the loss of its business before seeking a declaration finds no support in Article 3. That's true in the MedImmune context because what the Supreme Court didn't do was eliminate the standing requirement. The standing requirement, still in MedImmune, still post-MedImmune, is injury in fact, caused by the patent holder, redressable by the lawsuit. That three-part test, it is not arguable. Caused by the patent holder, if you hold that to a strict standard, you wouldn't have any D.J. jurisdiction. The harm isn't caused by the I disagree. The D.J. jurisdiction originally was started, let's say the patent holder went to their customers and said, I have a patent. They didn't sue on it, but they went to their customers and said, the product that you're buying from our competitor, that infringes our patent. You shouldn't do that. You're going to have a problem down the road. That's caused by us. It's clearly injury in fact. Their customer then says they get scared. That's what the D.J. jurisdiction is designed to prevent. Not to give any competitor a right to come into court merely by applying for it. So long as your client's conduct is neutral to the setting. I believe that's right. I'm looking for a flavor here. So long as the patentee remains neutral no matter how many no matter how much you're being badgered about the years by the infringer. So long as it's not conduct attributable to the patentee, which has caused injury in fact, I think D.J. jurisdiction cannot exist. And rightly so. Would a letter to the PRASCO by MEDICIS just saying that we have a patent period, we hold this patent, would that be similar to placing a marking on the product? No. It would not be similar because it would be directed specifically to PRASCO on its product. That's sufficient to step over the line at that point just by notifying the other side that you have a The law to now would not say yes to that. The law would say no, that that's not sufficient by itself. So where does that line to be drawn? I'm trying to figure out where the gray area is so that we can at least determine what the DMZ area is. I don't think this case requires you to do that because you don't even have that fact here. I think you will get that case at some point and then you will have to decide that case. I can't speak to a hypothetical case about just whether a single letter. I don't think that's enough nor should it be. If the letter says we think your product that you're selling infringes and here's the claim charts which is similar to the Mossade case for example I think the answer is yes then. If it's hey we've got some patents and not an accusation of infringement against a particular product I don't think that that was there. I can understand why people might reasonably disagree about that. Obviously the court does not want any form to elevate over substance and we all know that people can have veiled threats in letters that don't use magic words of infringement but that's going to you're going to have to look at the circumstances of that case. You can send a vanilla type of a letter out saying we have these patents period but you can say a little bit more than that and say well we have these patents and you know we've enforced our patents in the past period. Now does that step over the line just by indicating that you have enforced other patents in the past? There are cases which have held that that is an implicit threat and therefore that's sufficient to place to give that party in that sense a perceived threat of litigation and justified jurisdiction. And those are often linked to the specific relationship in those cases between those parties and so there are always other facts that are osmotically affecting just that letter because the letter is never viewed in that much in the abstract because there's always facts that affect that. It's never sent out in the abstract in that basis as Judge Clevenger was pointing out if you enforce 15 patents in the past against that particular corporate entity and you send another letter out saying hey we own this patent period that might be sufficient to cross the line. I could see a much better argument in that case than I would see in this case. I'm happy to I would like to address Judge Clevenger's question if I may which is about the supplemental complaint. On that issue the reason we raised the question is it seems clearly to me to be a supplemental complaint the line is I think blindingly clear that if it's material that occurred after the original complaint it's in D not A Now the argument as I heard it ten minutes ago is that sub silencio the district judge blessed it going backward and treated it as over supplemental. Obviously it wasn't addressed in those terms and we don't know what the judge's intent was because it wasn't articulated and it wasn't briefed that way. It wasn't discussed that way. Under the technical reading of the law we're under the original complaint not the amended complaint. In our view obviously it doesn't matter because there's not jurisdiction under either but the facts are important to address Judge Clevenger's question they filed the original complaint before they'd sent us the samples, before they'd asked us for the covenant before all of that. They just filed the complaint and then they filed an amended complaint I think within a day or two of actually sending us the samples and asking for the covenant and the amended complaint and so it wasn't a situation where they came to us and said please tell us whether we infringe or not and they didn't get an answer and then they filed. They filed first, peremptorily and I think Counsel, are there cases in the district courts and in regional circuits where they've allowed a judge to control his own courtroom vis-a-vis the motion requirement and waive the motion requirement even if he doesn't do so explicitly he can simply accept the supplemental complaint without actually doing it in any formal way. There is no doubt and that's why I've said under either we believe there's no jurisdiction and there's not even an argument on the original complaint but on the amended complaint there's no doubt in my mind at least that the district court would have discretion to consider that amended complaint as a supplemental complaint even in the absence of a motion. Of course he could do it on his own and clearly have jurisdiction and discretion to do it. Why shouldn't we treat him as having done that here since he has a whole section in the opinion attributed to 15D and talks extensively about supplemental. I would not assert it as error if you did. Even though you did not file an answer to the complaint there was no answer filed. There was no answer filed and that's why I say as a matter as a technical matter we believe it's not a viable plea because it was filed improperly. As a technical matter I believe that's true. From the point of view of judicial economy I can see why you're not fighting it. I mean if we were to say oh my goodness we're only going to look at the original pleading, clearly no jurisdiction it goes back and they ask for leave to file the amended complaint and the judge says what are those guys up in Washington doing anyway? I believe that's a likely scenario. I I would not argue that this court should resolve it in that fashion. I'm sure you'd love another trip to Southern Ohio. I have nothing further unless the court has further questions. Thank you Mr. Morris. Very briefly your honor. The amended complaint was actually filed just over 20 days after samples and those were sent on July 28th and the amended complaint was filed on August 18th. That's in the record at A117 through 28th. The fundamental problem with the line drawing that Metasys is proposing is everything they're suggesting relates to some kind of threat of suit. Whether it's a threat to Prasco implicit or otherwise or whether it's a threat to Prasco's customers but we know that that can't be the case anymore. There has to be something less than that. By having asked him the question to throw in some more facts he said well if my client had gone to your customers and waved the patent in their face then he said that would be a mistake for my patent to do that sort of thing and I think he agreed that if if you had been sued at every turn in your life by this particular patentee even in cases where you want to rule 11 sanctions against them for having filed against you he would recognize if that could be so. What we're suggesting here is something more subtle was going on here because the court should not forget that subsequent litigation whether it involved prior litigation whether it involved patents in the same family or not it's a factor that should be taken into consideration because it colors all the facts here and gives context to what happened. Prask wouldn't file this declaratory judgment action for the fun of it or because they wanted to go after a quiet or small patentee. They filed it because generally they reasonably apprehended and were wary of another suit of getting blindsided in another form and place of Metasys' choosing. That's why they filed it. They didn't file it for the fun of it and that is a very if not a direct a very implicit subtle type of threat. This patent is being dangled over their head now just as if they had written a letter and said we have this patent we've sued others on other patents. Counselor, you're asking us to assume why your client filed the suit and factor that in. I have no way of knowing. Maybe your client filed the suit to harass them. Maybe your client filed the suit simply to gain the benefit of forum shopping to pick the district. I can't begin to imagine why your client filed the suit or to attribute to them good intent in this capacity. There are no facts in the record that suggest or otherwise allow me to do that. I can't imagine why I would take that into account when I'm now analyzing whether there is actual case or controversy under the Constitution. Whether there's good intent or not of why they filed it, Your Honor. By the way, absolutely they didn't want to get blindsided in Arizona again like they were before. I think that goes without saying. They filed this suit because they wanted patent at risk. Whether they withheld the product or whether they launched, the fact of attaining that certainty or trying to wipe away that legal uncertainty and the risk of catastrophic infringement damages or worse the product later getting pulled off the market, that's exactly the type of injury in fact that the Declaratory Judgment Act was designed to alleviate and to address. It doesn't have to be an express threat. All we see from Metis is it's got to be some type of affirmative contact conduct, but we're not hearing anything other than express threats. Now under the test, the all circumstances test, we know that that's not the test. It can be anything giving rise to dispute. The paranoia alone is not enough to establish the jurisdiction. You can say, oh my God, I was sued once by people and I'm just scared to death. That couldn't be enough. It's like a bilateral contract. There has to be some vibes coming from both parties towards each other and it's where those vibrations hit each other that create whether or not there's a justiciable controversy. If the patentee just does nothing, if we took the marking out of the case, that hurts your case, right? If you take the marking out, yes, we think it's a fact that should be considered, but it's not the only fact. The fact of the suit. And if you take the covenant, the request for the covenant not to sue and discount it because it's a trap for the unwary from the patentee's point of view if the would-be infringer could come up and say, oh, give me a covenant not to sue or give me a rarely free license and the patentee says, well, why am I talking to this person? I have no intent to do anything to them. I can stand mute. Well, except when you're standing mute in the face of the prior litigation, Your Honor, then it becomes, as Your Honor said, the vibes are going the other direction. But in your case, it would be if the patentee gets one bite of the apple. If you ever sued the person before, then that converts mild paranoia into actual fear. Well, shouldn't it take more than one lawsuit to pass on an unrelated patent? In our view, Your Honor, with the facts here, no. We think one lawsuit can do it. We don't think you need 15 or some balancing of 15. I don't need to be 15, but a pattern of conduct. From your perspective, one yields to a pattern. In the context of the other facts, Your Honor, yes. We would say that would demonstrate a controversy under all the circumstances test that now applies. Case is submitted. Thank you very much. Thank you.